(No. 3470 )

Mary E. Lane Laux, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed June 5, 1947.*

*Petition of Claimant for Rehearing denied September 18, 1947.*

Joseph S. Perry, George Perrine and Edgar J. Elliott, for claimant.

George F. Barrett, Attorney General; William L. Morgan, Assistant Attorney General, for respondent.

DAMRON, J.

Claimant, Mary E. Lane Laux, contends that her farm and subdivision property on Stanton Bay near Fox Lake, Illinois, has been damaged to the extent of $15,-600.00 because of an overflow of water thereon as a result of the construction in 1939 of the dam at McHenry, Illinois.

The undisputed evidence shows that claimant is the owner of a farm and certain lots in subdivisions situated within a few hundred feet of Fox Lake about 11 miles south and upstream of the McHenry dam.

In 1939, the old dam was replaced with a new structure. The permanent crest of the old structure at its highest point was 733.9 feet above sea level. A series of four temporary flash boards or planks each about 7½ inches wide were kept above the permanent crest during the summer season to maintain adequate boating depth in the chain of lakes. These flash boards would be removed in the autumn.

The new dam was built to replace the old and deteriorated structure for the purpose of maintaining a more constant water level. It is a concrete and steel structure with a permanent crest 736.40 above sea level and has five vertical by-pass gates to regulate the level and flow of water. Except during heavy precipitations, it has maintained normal water levels in the chain of lakes and has eliminated the previous fluctuations which existed.

Claimant contends that the top level of the new dam is 30 inches higher than the old structure resulting in a permanent 30 inch rise in the water level. The record, however, indicates that the present crest of the new

structure is slightly lower than the old dam with its four tiers of flash boards.

Claimant introduced her own testimony and that of other witnesses to the effect that after the dam was constructed in 1939 the water began to overflow and remained over approximately 45 acres of farm land previously used for growing hay and night pasturage thereby preventing her from using or renting the property and greatly impairing its value. She also testified that by reason of similar flooding certain subdivision lots, one of which had been previously filled at considerable cost, had been considerably commercially damaged. It was admitted that prior to 1939 this land would periodically be under water during spring floods but later the water would recede whereupon she could utilize the land. Now, however, the water does not recede entirely and the land is covered with muskrat houses and is worthless.

The testimony on behalf of respondent, corroborated by hydrographic charts, established that the present structure with its head gate section and by-pass gates has eliminated overflows and maintains constant levels except for heavy precipitation. The water was never higher in the new dam and as a rule the water level has been lower since the dam was constructed.

Claimant's theory appears to be that while the new dam has maintained more constant water levels it has operated to prevent the recessions of spring flood water, as in the past, causing higher water to remain throughout the late summer months over that part of her premises previously used for pasturage. The evidence as we view it, included the hydrographic charts, indicates that prior to the new dam the water levels in the chain of lakes, even in late spring and summer months, over

many years was as high, if not higher, than it has been since the old dam was replaced by the new structure; the excessive seasonable fluctuations have been eliminated; and more constant levels have been maintained.

The accuracy of this observation is confirmed by the hydrographic record of water levels for the years 1926 to 1942. During the month of June for all these years, the water level was as high or higher during twelve of the thirteen years preceding the construction of the new dam than it was for any of the years subsequent thereto. For July, it was as high or higher for 8 out of the 12 preceding years; for August it was as high or higher for 9 out of the 12 preceding years and for September, it was as high or higher during 8 out of the 12 years for which records are available. This would indicate that the peak water mark even during later summer months following spring floods was leveled off and reduced by the new dam rather than raised. The records for earlier and later months of the years preceding and following the replacement of the old dam are even more impressive in this respect. This evidence cannot be reconciled with claimant's assertion that damage to her property resulted from the construction of the new dam at McHenry, Illinois.

Claimant has failed to establish her case by a preponderance of the evidence and an award is denied.

Award denied.